## WHAT CONSTITUTES CONTEMPLATION OF DEATH UNDER THE INHERITANCE STATUTES.

Common Pleas Court of Ashland County.

### IN RE ESTATE OF F. E. MYERS, DECEASED.

Decided November 19, 1925.

*Wills—Gifts and Successions Under the Inheritance Statutes—Construction of the Words "Contemplation of Death"—Statutory Exemptions to Donees—Determination of Future Income Annuity—Sections 5331 (Sub. 5) and 5342.*

1. Gifts and successions made by the donor, admittedly within two years of his decease and without an equal valuable consideration, are *prima facie* made in contemplation of death, and the burden of proof is upon the exceptors to overcome the presumption and show that such gifts and successions were not made in contemplation of death.

2. General Code, Sec. 5331, Sub. 5—"contemplation of death means that (the) expectation of death which actuates the mind of the person on the execution of his will," lends little aid in determining "contemplation of death"; but rather it can be determined, if at all, only by consideration of all the surrounding facts and attending circumstances and applying them according to human experience and accepting the result as the nearest approximation that can be obtained.

3. In real estate, where the value is sought to be obtained from its rental returns, that statute (5342, G. C.), requires the employment of a 5 per cent rate regardless of the fact that there may be some precedent and business usage suggesting a rate of 6 per cent.

4. But one statutory exemption is allowable to each donee in any one estate, regardless of whether the gifts are one or several, provided they come within the period for which the tax is assessed, and any remainder and gifts found to have been made in contemplation of death will be considered as a whole in determining the inheritance tax and allowable exemptions.

*M. V. Semple* of Ashland, and *T. G. Thompson,* of Cleveland, for John C. Myers, administrator, and the exceptors.

*Mr. O'Toole* and *Judge Gibbs,* of Columbus, for the Tax Commission of Ohio and from the office of the Attorney General.

GRAVEN, J.

This case comes into this court on an appeal from the probate court, from an order overruling exceptions to the determination of the inheritance tax in the estate of F. E. Myers, deceased.

The probate court found and determined that the gross value of said estate (including the property of the value of $5,281,140.25, distributed by decedent in contemplation of death, or to take effect in possession or enjoyment at or after death) is $12,293,440.30, composed as follows: personalty $11,455,360.30; real estate $838,080.00; that the debts and costs of administration are estimated at $1,-912.00, and that no one is entitled to dower in said real estate; and the probate court further found that the net actual value of said estate, which might be subject to inheritance tax, is $11,390,336.33 .

The total amount of tax assessed was ordered to be paid by J. C. Myers, the administrator; and to the order of the probate court determining said inheritance tax, John C. Myers as administrator and John C. Myers as individual, Helen Myers Miller, and Mary Myers Parker, children of F. E. Myers, deceased, in connection with other interested parties, filed certain exceptions as follows:

1.   That in determining the amount of the inheritance taxes due from them said auditor, acting as such appraiser, and the probate court, included as having been given, transferred or distributed to them by the decedent in contemplation of his death, or by gift or transfer intended to take effect in possession or enjoyment at or after death certain gifts made to said exceptors on the following dates, and in substantially the amounts, viz., December 22, 1921, $1,238,188.96; January 12, 1923, $600,000.00; May 14, 1923, $420,000.00; August 24, 1923, $3,022,951.29.

2.   That the findings and determination by said auditor as such appraiser and by the probate court that said gifts or transfers to said several exceptors were made by

the decedent in contemplation of death, or were intended by him to take effect in possession or enjoyment at or after such death are contrary to the evidence and contrary to the facts.

3.   That said order of said probate court is contrary to and without warrant of law.

Said exceptors later filed additional exceptions on the ground that the valuation of a certain parcel of real estate situated at the southeast corner of Euclid avenue and East Fourth street of the city of Cleveland, Ohio, was valued by the auditor and the probate court at $420,000.00, when it should have been valued at $350,000.00, and also excepted to said order of the court for the reason that certain exemptions should have been deducted from the value of various gifts made by the decedent as of the time said gifts were made.  However, in exceptors' brief filed herein, beginning on page 2, it is stated that "On this appeal, the principal and almost sole question is that with reference to the property so valued by said administrator at $5,221,140.25, that the decedent admittedly gave away in his lifetime."

It is conceded by the administrator and the other exceptors herein that the decedent, without a valuable consideration, substantially equivalent in money or money's worth to the full value of such property, gave and transferred to the exceptors herein within two years prior to his death, property of the value of $5,281,140.25.

That the amounts and dates of said respective gifts were made without a valuable consideration substantially equivalent in money or money's worth to the full value of such property, and that said gifts were made within two years prior to the death of the transferror is expressly conceded by the exceptors herein, and, under Section 5332-2, General Code, hereinafter recited, must therefore "Be deemed to have been made in contemplation of death, unless shown to the contrary."

The paramount question therefore, to be determined by this court on appeal, is as to whether the exceptors have, under the law and the evidence herein, shown to the court that said gifts were not made in contemplation of death.

The city of Ashland, Ohio, and the Tax Commission of Ohio, assert that the testimony and the evidence before the county auditor and the probate court, were entirely insufficient to sustain the claims of the exceptors.

Section 5332-2, General Code, provides:

"Any transfer of property from a resident    *    *    *, if shown to have been made without a valuable consideration substantially equivalent in money or money's worth to the full value of such property, if so made within two years prior to the death of the transferror, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

"It shall be the duty of the persons by whom the application for determination of tax is filed to set forth in detail therein a list of all such transfers    *    *    *."

It is evident under the provisions of this section that the burden is upon the exceptors herein to show that the gifts were not made in contemplation of death.

Section 5332, General Code, recites:

"A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of the person, institution or corporation, in the following cases    *    *    *.

"3.   When the succession is to property from a resident    *    *    *   by deed, grant, sale, assignment or gift made without a valuable consideration, substantially equivalent in money or money's worth to the full value of such property:

"(a)  In contemplation of the death of the grantor; or

"(b)  Intended to take effect in possession or enjoyment at or after such death    *    *    *."

"In contemplation of death," as defined by Section 5331, General Code, is as follows:

"In contemplation of death means that (the) expectation of death which actuates the mind of the person on the execution of his will."

The amount of the tax, according to computations of the appraiser, based upon his said total valuation of $11,-330,336.33, was $445,968.46, and the order of determination by the probate court which was entered *pro forma* based upon the report of said appraiser was for that amount. The distributees of the estate, namely the three children of the decedent, have waived their objections to the valuation at which the appraiser included the items making up his said total of $6,109,196.08, and the administrator proportionately from the distributive shares of each of said children has paid to the county treasurer a total tax of $234,197.85, that being the amount of the tax, without interest, computed upon successions to property of said total value of $6,109,196.08. The difference between said $445,968.46, representing the total amount of tax claimed by the appraiser, and said amount of $234,-197.85, so paid by the administrator, such difference being $211,770.61, is the amount, except interest, in dispute in this proceeding.

On this appeal the principal and almost the sole question is that with reference to the property so valued by said appraiser at $5,221,140.25, that the decedent admittedly gave away in his lifetime. The Tax Commission contend that he gave this property away in contemplation of his death and that it should on that account, in determining inheritance taxes, be included with and taxed as part of his estate. The exceptors, appellants in this case, deny that he contemplated death at any of the times that gifts of such property were made, or that the expectation of death induced or actuated the making of any of said gifts, and contend that they should not therefore be taxed upon the value of any of said gifts as upon successions to them from the decedent.

Clearly the admissions bring the said gifts within the statute and raise the presumption and are deemed to have been made in contemplation of death, unless otherwise

proven to the contrary, and imposes the burden of proof upon the exceptors, the appellants herein to overcome the presumption and prove the otherwise are contrary.

The first and paramount question for consideration and determination is, "Did decedent, F. E. Myers, make and provide the gifts and successions set out in Item 1 of the exceptions with its subheads, under apprehension and contemplation of death?"

It being admitted that all such gifts and successions were bestowed by the decedent upon the several beneficiaries within a period of two years and without an equal valuable consideration makes a *prima facie* case for the taxing authorities and imposes the burden of proof upon the exceptors with the qualification that may hereafter appear, to overcome the presumption that such gifts and successions were made in contemplation of death and, therefore by law, subject to such taxes as the laws of the state impose in such matters.

The statutory law applying and governing is provided by the Legislature in General Code 5331, Sub. 5, Section 5332, and 5332-2, heretofore recited.

Nowhere in the evidence is there even an implication that the decedent, F. E. Myers, actively or deliberately even contemplated the avoidance of any lawfully imposed inheritance tax, but rather this matter is in court and the donees are obliged to answer by the coincidence that the decedent made certain gifts and created certain successions within a period of two years of his decease and the laws of the state providing that such gifts being made within two years of the donor's decease shall, unless shown to the contrary, be deemed to have been made in contemplation of death and therefore subject to the taxes. And, it is with the exception or alternative—"Unless shown to the contrary" that we are fundamentally concerned here to determine whether the presumptions that came into existence by admitted facts and statutory provision have been overcome by all the evidence adduced in the case.

Some difficulty is experienced in determining as an abstract proposition just when, where and how and within what limits "Contemplation of death" might reasonably be said to arise. It is not given to one man to search out and reveal minutely the operations of the mind of another, and only approximate results, if any, can be obtained by careful consideration of all the surrounding facts and attending circumstances, and applying them according to human experience and accepting the result as the nearest approximation that can be obtained.

The legislature attempted to remove the difficulty and render much aid when they provided in General Code, 5331, Sub. 5, "Contemplation of death means that expectation of death which actuates the mind of a person on the execution of his will. But their efforts lend little, if any, real assistance.

Death is, of course, the ultimate event which must be the fate of all. Nevertheless, few men in their worldly affairs contemplate it seriously unless its approach is forcibly brought to their attention. A person may be prompted at the time of his desire to make a will by one or more of a myriad reasons. The first necessarily being a desire to make another disposition of his worldly goods and effects than would be made by law if he died intestate or desire some wish or order complied with which would not be done unless he, by lawfully executed will, ordered it. And, further, he may be acting upon mere possibility or upon the immutable law and inevitable fact that all men must die, and that if such an event does come to pass he is thus far prepared, and such an act scarce raises a presumption that he, in any wise, contemplates an early demise.

Then if we follow this statutory gauge or test through we find that if a testator was actuated to make a will because he contemplated death and this is the only purpose he could have had for making a will, for such would be

useless except after death, and from the fact that he made a will he contemplated death, and because he contemplated death he made a will—patently absurd. To follow this reasoning; as long as a will exists and the testator recognizes the writing as his will he contemplates death and all gifts and successions would bear that impress and no two year presumption or any other presumption would be necessary to fix the matter, but if the testator should change his mind and destroy his will, then the impress of contemplation of death would be removed and he could then proceed with his gifts as he chose until some act of his, or attendant circumstances again impressed his gifts with the presumption of contemplation of death—absurd again. The law does not contemplate any such trifling thing.

, Then let us consider contemplation and death and consider them in their reverse order.

"Death." Briefly is cessation of life; that state of a being animal or vegetable, in which there is a total and permanent cessation of all vital functions.

"Contemplation. Can only be arrived at by an approximation and cannot be derived with scientific precision or mathematical certainty."

Century Dictionary and Encyclopedia defines "Contemplate." "To consider, meditate upon, muse upon, reflect upon, ponder, dwell upon, think about. To design, plan or purpose. The act of intending, purposing or considering with a view to carrying into effect, expectation with intention."

If we are able to determine just when in the closing years of his life if at all, the decedent considered himself in *periculo mortis* or *in extremis* our problem would be solved, but these facts we must obtain, if at all, by a process of deduction from such attendant facts as we have evidence of. This case must resolve itself entirely upon questions

of fact to which, when obtained, the law will be applied. At what time during the period of December 22, 1921, to December 2, 1923, *i. e.*, within two years prior to his death did the decedent contemplate, if at all, the close of his earthly being, and was he so imbued with that thought that he wished and purposed to put his house in order and sought to do so by making one or more of the gifts or creating the successions admitted to have been within said period.

First, let us consider and determine from the admitted facts and evidence whether such gifts or successions were *inter vivos* or *mortis causa.*

A gift *causa mortis* has many of the elements of a gift *inter vivos,* but there are distinguishing features. A gift *mortis causa* may be made only when the donor is in apprehension or peril of death; further, the gift is conditional being subject to revocation by the donor at any time before his death and is revoked by law should the donor escape the peril or recover from his illness or outlive the donee. With gifts *inter vivos* the title passes immediately upon delivery and the gift is irrevocable. And, too, generally speaking, a gift *mortis causa* may be said to be a transfer of personal property (for it is clear that the title to real estate could as a gift be passed only by conveyance to the donee or to some one in trust for such donee), accomplished by delivery and acceptance from a donor who is in peril or apprehension of death, who makes such transfer in view of such peril or apprehension, the gift being revocable by the donor during his life and being annulled should the donor escape from the peril, recover from the illness or survive the donee.

Such gifts were not formerly looked upon with favor by the courts and no presumption existed in favor of gifts *mortis causa* but rather they required to be clearly proven. Especially was this true where bone fide interests of others would be prejudiced by such gifts. On the other hand, the make up of the principle of gifts *inter*

*vivos* was much simpler, and in general required only the gift absolute by the donor, competent to act, and the acceptance by the donee, and if no substantial rights of another were prejudiced thereby no one could complain.

However, the legislature in General Code 5332-2 has limited and modified the long· cherished rules of law relative to both of the foregoing type of gifts and have impressed them with the limitation that if so made within two years prior to the death of the transferror, shall unless shown to the contrary be deemed to have been made in contemplation of death. Thus leaving us with little concern whether the gifts made and successions created by the donor were, in a strict sense, in *mortis causa* or *inter vivos*, but rather lending the impression that a new condition had been created by statute, and that it is with this condition we have to deal in this case. In other words, we are again back to the proposition are the gifts admittedly made by the donor within a period of two years of his decease, or any one or more of them, to be deemed in contemplation of death, or has the contrary been shown by the evidence in contemplation of the statute?

Then let us consider the evidence and apply it to each item of the gifts in the chronological order as they were made and attempt a conclusion therefrom. And, in doing so, let us divide the evidence into the several classes into which it would naturally fall.

1st.  The testimony of medical attendants.
2nd.  The testimony of business associates.
3rd.  The testimony of disinterested friends.
4th.  The testimony of decedent's family, i. e. children, namely, Mary Myers Parker; John C. Myers and Helen Myers Miller.

And, divide the gifts and successions into chronological groups.

1st.   December 22, 1921, securities by irrevocable trust with the Union Trust Company of Cleveland, Ohio, for the benefit of donor's wife, Alvesta S. Myers, deceased March 28, 1923, and his three children, Mary Myers Parker, John C. Myers and Helen Myers Miller, of the agreed value as of the date of donor's death, December 2, 1923, of $1,238,188.96.

2nd.   January 12, 1923, Decedent gave shares of common stock of the F. E. Myers & Bro. Company as follows:

John C. Myers, Son, Value $180,000.00.
Helen Myers Miller, Daughter, Value $180,000.00.
Mary Myers Parker, Daughter, Value $180,000.00.
Alice Mould Myers, Daughter-in-law, Value $20,000.00.
T. W. Miller, Son-in-Law, Value $20,000.00.
Frederick L. Parker, Son-in-Law, Value $20,000.00.
Total value _____ $600,000.00

3rd.   May 14, 1923, decedent conveyed to his three children Mary Myers Parker, John C. Myers and Helen Myers Miller real estate in the city of Cleveland, Ohio, southeast corner of East Fourth Street and Euclid Avenue, said real estate being under lease for a period of 99 years, beginning April 1, 1911 and running to April 1st, 2010.   With the present worth of the unexpired rentals upon a six percent basis, on December 2, 1923, at the death of the decedent, of $347,670.00.

Valued at _____ $420,000.00

4th.   August 24, 1923, decedent gave to each of his said children, Mary Myers Parker, John C. Myers and Helen Myers Miller, equally, bonds of the total par value of $3,000,000.00.

Value of said bonds on Dec. 2, 1923, $3,022,951.29.

The entire testimony in this case is singularly fair and frank and would lead to no other conclusion than that all should be believed as to the matters it attempted to relate.

The evidence in its entirety leads to but one con-

clusion and that is that F. E. Myers was in active control of his business affairs, looking after its many details until a very short time before his death, and that on December 22nd, 1921, he created the trust 'set out in gift No. 1, but that he retained some supervisory control of its reinvestment and expressed, prior to gift No. 2, January 12, 1923, his intention and desire to make other gifts to members of his family that their incomes might be augmented to meet their growing needs. And, that in his gift No. 2 he still retained a directing control over the F. E. Myers & Bro. Company of which he was president and executive head, and of which the stock making up gift No. 2 was an integral participating part of the company of which the donor retained a very large interest and absolutely dominated the policies of the company.

And, further, there had not until this time, been any pronouncement that Mr. Myers' ailment was of an cancerous or malignant nature as far as the evidence shows, and such diagnosis was not arrived at by the family physician, Dr. Patton, until the return of Mr. Myers from Florida about . March 24, 1923, and not known to the members of the family until March 26, 1923, when the diagnosis of Dr. Patton was confirmed by Doctors Crile and Phillips and others of the Cleveland Clinic and the family, except Mrs. F. E. Myers, whose death ensued while Mr. Myers was at the clinc for observation, diagnosis and treatment, were informed of the diagnosis, and, according to the undisputed evidence of all who testified upon the subject, Mr. Myers was not informed of the true diagnosis of his troubles until about ten days or two weeks prior to his death.

·· The court finds· that the evidence and testimony shows clearly and beyond any doubt in the mind of the court, that the decedent made the gifts No. 1 and No. 2 not with a contemplation of death but rather in contemplation of

living and of seeing his donees use and enjoy the benefactions, and in the hope of adding further gifts to those already made.

Therefore, the court finds that any presumptions that have existed relative to said gifts having been made in contemplation of death by reason of their having been made within a period of two years prior to donor's decease, has been overcome by evidence to the contrary, and that gifts prior to the said March, 1923, and business arrangements made were such as any man in good health and excellent physical and mental preservation for his years and with the hope of life still before him, and with large business interests would make.  They were not made in contemplation of death but in contemplation of the welfare of his family, by making them more responsible for the management of large business interests and guarding against reverses under his wise counsel and broad business experience.  And, that said gifts No. 1 and No. 2 should not be included in the assets of the decedent subject to the inheritance tax, and appellants exceptions as to the said gifts and succession No. 1 and No. 2, dated December 22, 1921 and January 12, 1923, respectively, are accordingly sustained.

Then, as to gifts and successions No's. 3 and 4, dated May 14, 1923, and August 24, 1923, we derive from all the evidence a different and opposite conclusion: That Mr. Myers returned from Florida late in March, 1923, a very sick man, and was taken to the Cleveland Clinic for observation, diagnosis and treatment, where his malady was diagnosed as a growth or lump of a malignant or cancerous nature at the "caecum" or at the point of conjunction of the large and small bowel, a non-operative case, and received treatments there and thereafter which were of such a nature as would lead him to believe that he had a very serious ailment which, together with his shown loss of weight, strength and vitality, and suffering

endured, would, as a natural sequence, prompt him to contemplate the inevitable, and prompt him to put his wordly affairs in order. Any other theory would, in the light of the evidence of Mr. Myers' remarkable foresight and business sagacity be highly improbable, and the only conclusion that the court can arrive at is that the said gifts and successions No. 3 of May 14, 1923, and No. 4, of August 24, 1923, could reasonably be deemed to have been made in contemplation of death.

Therefore, the court finds that appellants exceptions as to said gifts No. 3 and No. 4 should be overruled and so orders.

Considering then appellants *"Additional Exceptions,"* Item 1, complaining that with certain real estate at Euclid Avenue and East Fourth Street, Cleveland, Ohio, the value found by the auditor as such appraisor and the probate court at $420,000.00, and impressed with a lease expiring in the year A. D. 2010, at a rental of $21,000.00 per annum, which rental represented a five percent return upon a valuation of $420,000.00, whereas the rental return should be six percent upon a valuation of $350,000.00, as recognized and followed by business usage and custom in the larger cities and contending that said appraisal at $420,000.00 was charging them with the inheritance tax on the sum of $70,000.00, which they contend they should not pay but insist that the value of said premises should be $350,000.00, based upon a six percent return basis, as sanctioned by business usage.

The statutes of the state of Ohio leaves the court little or no latitude for the indulgence of any individual views or the consideration of business usage or the exercise of discretion to modify the percent of return basis.

General Code 5342 prescribes the method of deriving the value on income as follows:

"The value of a future or limited estate, income, interest or annuity for any life or lives in being * * * or other estate or interest upon which any estate or interest the succession to which is taxable under this chapter is limited shall be determined * * * except that the rate of interest shall be five percent per annum."

Clearly the legislature in enacting General Code 5342 contemplated and provided that where any future income is used in ascertaining the present worth of any succession for purposes of inheritance taxes that a five percent income return basis shall be used. And, since the legislature has provided a set rate for the entire state that shows clearly the five percent rate must be used. The said exceptions are overruled.

Proceeding then to the second ground of appellants additional exceptions, complaining that at the dates on or about which gifts or transfers of property were made by said F. E. Myers to the exceptors, which the court has termed gifts No. 1, 2, 3 and 4, and in which each of the three said children participated in substantially the total sum as follows for each: Mary Myers Parker, $1,740,492.81, Helen Myers Miller, $1,740,355.94, John C. Myers, $1,740,291.50. But, that the Probate Court erroneously computed the several amounts due as inheritance taxes from these exceptors by not considering the value of each of the above listed gifts or transfers separately and apart from the value of the property owned by the decedent at the time of his death and the value of the interest of each of these exceptors therein, and by not applying separately to the value of such gifts or transfers to each of these exceptors on each of said dates the rates and exemptions allowable to adult children as successors under the provision of Sections 5334 and 5335 of the General Code.

The court can find warrant neither in law nor in fact for sustaining this exception, and it is therefore overruled.

The court therefore finds as conclusions of fact derived from all the evidence and testimony in the case, and counsel will incorporate in their Journal Entry these findings and conclusions as to fact and law, the facts to be 1st. that F. E. Myers, deceased, was in active control of his very extensive business affairs, looking after the details thereof until shortly before his death.

2nd.  That property accumulated rapidly and that his extensive holdings became more extensive under his personal management, control and direction.

3rd.  That prior to January 12th, 1923, he had contemplated plans to give his family further interests and further control of his extensive business.

4th.  That there was nothing in his physical condition prior to his return from Florida and going to the Cleveland Clinic in March, 1923, that would lead him to any suggestion that he would not live many years, and there was nothing in his business affairs that would lead to an inference that he was then arranging matters for death, or in contemplation of death, but that he was continuing to conduct his business affairs in the same manner he had done for many years, and his conduct would lead to the conclusion that he was contemplating living and not contemplating death.

5th.  That he was taken to the Cleveland Clinic for observation and diagnosis in March, 1923, and received treatments there and thereafter which were of such nature as would naturally lead him to believe that he was afflicted with a very serious ailment, and that extraordinary treatment for his relief or cure was required.

6th.  That any gifts made or successions created prior to the said March, 1923, and any business arrangements made, were such as any prudent man in good health, with large business interests to consider, and the welfare of his family at heart, would make.  They were not made

in contemplation of death, but in contemplation of the welfare of his family, by making them more responsible for the management and control of large business interests, and guarding against reverses under his counsel and broad business experience.

7th.  That prior to going to the Cleveland Clinic he looked after his own investments, his own bonds and business affairs, and that the gifts made after that time was a turning over to his children the absolute control of the property given.  The gifts before that time were of property in which he, in some degree at least, retained the guiding control.

8th.  That gifts No. 1 and No. 2, as previously detailed, were not made in contemplation of death.

9th.  That gifts No. 3 and 4 were made in contemplation of death.

10th.  The Court finds that but one exemption was allowed by the Probate Court to each beneficiary in figuring and determining the amount of inheritance tax that should be lawfully charged to each of said donees.

11th.  The court finds that there is some business precedents and custom and usage supporting the six percent return basis for determining the reasonable value of property by the return derived therefrom.

12th.  The court therefore finds as an application of the law, as hereinbefore detailed, that appellants exceptions as to gifts No. 1 and No. 2 should be sustained, and they are hereby sustained.

2.  That appellants exceptions as to gifts No. 3 and No. 4 should be overruled, and the same is done.

3.  That the exception as to the value placed upon the Cleveland real estate is governed by statutory enactment rather than by custom and usage, and this exception is therefore overruled.

4.  That there is no warrant in law for the allowance of more than one exemption to each beneficiary, in any

one individual estate. That with the court's ruling heretofore as to gifts No. 1 and No. 2 as made, this exception would have no application, but with the court's finding that gifts No. 3 and No. 4 should be included in the appraisal of decedent's estate any questions of exemptions would become pertinent as to beneficiaries participation in the distribution of the estate, but the court can find no law warranting the allowance of the particular exemption to which the beneficiary may be entitled in each succession, and cannot be construed directly or by inference to provide the allowance of more than one exemption in each estate participated in.

The court cannot from information provided or attained either as to interest or penalties, or other adjustment, reduce its findings to specific figures as to tax sustained or to taxes relieved from, and must necessarily leave the determining of such specific figures to the taxing authorities or the administrator and his counsel, to be derived in accordance with the findings of the court hereinbefore named.

Counsel will draw their Journal Entry in accord with the foregoing findings.

To all of which findings exceptions may be noted.

Motion for new trial, if made, overruled, with exceptions.

Appeal bond, if desired, fixed in the amount of $500.00.